tnk:2011R00755

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | **CRIMINAL NO.** _CCB-13-034_ |
| v. | * | |
| | * | **(Mail Fraud, 18 U.S.C. § 1341)** |
| **CASEY CHARLES,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

## CRIMINAL INFORMATION

## COUNT 1

### (MAIL FRAUD)

The Unites States Attorney for the District of Maryland charges that:

### Background

At all times relevant to this Criminal Information:

1.     Defendant **CASEY CHARLES ("CHARLES")** was a resident of Baltimore, Maryland, who owned and controlled Infinite Equity Strategies, LLC.

2.     Infinite Equity Strategies, LLC, was a Maryland limited liability corporation formed by CHARLES in August 2007, with the stated purpose as being a "financial strategies company."

### The Scheme to Defraud

3.     From in or about August 2007 and continuing thereafter through in or about November 2011, in the District of Maryland, CHARLES d/b/a Infinite Equity Strategies, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and to obtain money and property in the approximate amount of $890,000 by

1

means of materially false and fraudulent pretenses, representations and promises to his financial services clients, in that CHARLES promised to help his clients invest in safe and conservative investment products, while CHARLES in fact invested in risky and unauthorized investments on behalf of his clients and diverted investment funds to pay for his own personal and business expenses.

### Manner And Means Of The Scheme To Defraud

4.     It was part of the scheme to defraud that CHARLES held himself out as a "Financial Specialist" and "Safe Money Advisor" who could help his clients put their retirement funds into various investment products that would provide "high returns without high risk." CHARLES also promoted Infinite Equity Strategies as a "financial strategies company" that had not "lost a dime in the recession."

5.     It was further part of the scheme to defraud that CHARLES solicited potential clients by using direct mailings, newspaper advertisements, and television commercials.  For these mailings, CHARLES specifically targeted clients who were: retired and/or between the ages of 55 and 80, married, owned their home, and had an annual income over $25,000.  Some clients were also referred by CHARLES' friends and associates in the Baltimore, Maryland business community.

6.     It was further part of the scheme to defraud that CHARLES advised his clients that he would put their investment/retirement funds into safer, better performing investment vehicles such as annuities provided by reputable firms like ING, Aviva, and Allianz.

7.     It was further part of the scheme to defraud that once some of his clients

agreed to turn their investment money over to him, CHARLES instructed those clients to liquidate their current investment products and provide him with the funds.

8.      It was further part of the scheme that CHARLES, upon receipt of those clients' funds, did not deposit them into safe investment products as promised, but in fact deposited them into his own accounts without those clients' knowledge and authorization. He then used some of the fraudulently obtained funds to invest in risky and unauthorized investments on behalf of those clients and to pay his own personal and business expenses, including credit card and mortgage payments.

9.      It was further part of the scheme to defraud that CHARLES created multiple fraudulent documents including letters and account statements purporting to be from well-known financial products and services providers (e.g., Allianz, Aviva, and ING), which CHARLES then provided to some of his clients for the purpose of causing them to believe that he had in fact deposited their investment funds into safe investment products as promised.

10.      It was further part of the scheme to defraud that CHARLES told other clients to use self-directed Individual Retirement Accounts ("IRAs") and services provided by Equity Trust Company of Elyria, OH ("ETC"), which CHARLES claimed would be safe and provide the clients more control over their investments.

11.      It was further part of the scheme to defraud that after the clients agreed to transfer their investment funds to self-directed IRAs at ETC, Charles submitted false and forged documents to ETC directing ETC to transfer his clients' funds to an account that he controlled. His investment clients did not authorize, or even know about, the transfers.

3

12.     It was further part of the scheme to defraud that CHARLES issued unsecured "promissory notes" for the money he withdrew from the ETC accounts, but never provided them to the investors.  CHARLES used most of the funds he fraudulently obtained from his clients' accounts at ETC for his own personal and business expenses.

13.     As a result of his scheme, CHARLES defrauded over 22 clients of approximately $890,000 of their retirement funds, which in some cases was his clients' life savings.

**Execution of the Scheme and Artifice to Defraud**

14.     On or about April 1, 2010, in the district of Maryland, the defendant,

**CASEY CHARLES**

having devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing and attempting to execute the scheme and artifice to defraud, did knowingly cause to be placed in an authorized depository for mail matter an envelope containing four 4 checks totaling $58,601.04 which were created with the funds from the liquidation of BC's Individual Retirement Account, which envelope was sent from the District of Maryland to ETC in Elyria, Ohio.

18 U.S.C. § 1341

## FORFEITURE

The Unites States Attorney for the District of Maryland further charges that:

1.      Pursuant to 18 U.S.C. Section 981(a)(1)(C) and 28 U.S.C. Section 2461(c), upon conviction for an offense in violation of 18 U.S.C. § 1341 as alleged in Count One, all property, real and personal, which constitutes or is derived from proceeds traceable to the scheme to defraud, will be forfeited to the United States of America.

2.      The property to be forfeited includes, but is not limited to, a sum of money equal to the value of the proceeds of the scheme to defraud which amount is at least $890,000.

3.      If any of the property described above, as a result of any act or omission of the defendant:

    a.      cannot be located upon the exercise of due diligence;

    b.      has been transferred or sold to, or deposited with, a third party;

    c.      has been placed beyond the jurisdiction of the court;

    d.      has been substantially diminished in value; or

    e.      has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States

5

Code, Section 2461(c).

18 U.S.C. §§ 981(a)(1)(C), 1956(c)(7) and 1961(1); 28 U.S.C. § 2461(c); F.R. Crim.P. Rule 32.2(a)

_____
Date

Rod J. Rosenstein
United States Attorney